IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BENJAMIN DAVIS, III, #292-280,<br>     Petitioner | * |
| | * |
| v. | CIVIL ACTION NO. WDQ-04-3748 |
| | * |
| RODERICK R. SOWERS, et al.,<br>     Respondents | * |

*******

**MEMORANDUM**

On November 23, 2004, the Clerk received for filing Petitioner Benjamin Davis, III's 28 U.S.C. § 2254 attack on his 2001 convictions in Howard County Circuit Court for attempted second degree murder and related offenses. Paper No. 1. Respondents answered the Petition. Paper Nos. 11, 15 and 16. Petitioner has filed a Reply. Paper Nos. 13, 18, and 21.[1] After consideration of the pleadings and exhibits, the Court sees no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2). For reasons to follow, the Petition is hereby denied and dismissed with prejudice.

**I. Procedural History**

On October 9-12, 2001, Petitioner was tried before a jury in the Circuit Court for Howard County, the Honorable Raymond Kane, Jr. presiding. Paper No. 11, Ex. 1. The facts adduced at trial as recounted by the Court of Special Appeals of Maryland are as follows:

> Before going out to a bar on the evening of February 9, 2001, Davis, Aamir Benton, Craig Mott, and several other people were gathered at Stephanie Christian's house. Christian's mother came home before everyone left and "kicked everybody out of the house." Benton asked Mott if we would give Benton and Davis a ride to Benton's grandmother's house, a few blocks away from Christian's house. Davis,

---

[1] In accordance with *Thompson v. Greene*, 429 F.3d 263 (4th Cir. Oct. 25, 2005), this Court directed Respondents to provide Petitioner with all exhibits attached to their Answer. Paper No. 19. This they have done. Paper No. 20.
    Petitioner has also filed a Motion for Contempt (Paper No. 22) wherein he takes issue with Respondents' reliance on the Maryland Court of Special Appeals' dismissal of Petitioner's claims regarding the evidentiary issues. Petitioner's Motion is without merit and shall be denied.

Benton, Mott, Nick Hebron, Nick Scarborough, and Greg Scarborough left together in Mott's girlfriend's car.

After leaving Christian's house the car arrived at the intersection of Jones Road and Mary Lane in the Jessup area of Howard County, an intersection near Benton's grandmother's driveway. According to testimony from Mott, Davis, Benton, and he were involved in the drug trade. Benton told Mott to get out of the car so Benton could "holler at [him] real quick." Mott, Davis, and Benton all got out and stood at the back of the car near the trunk. Benton was supposedly upset with Mott for not sending him commissary money while Benton was in jail. Benton had apparently helped Mott enter the narcotics trade and believed that Mott, out of respect, should have helped him during his incarceration. At some point, Mott alleged that Benton told Davis to "heat this nigger up."

At that instruction, Davis reached for a gun he had concealed in his waistband. As Davis went for his gun, Mott fled into the woods around the intersection. Mott heard at least one shot fired behind him. Mott reached a house where Jason Benjamin let him in and allowed him to call 911. Both Mott and Benjamin saw Mott's girlfriend's car drive off toward Guilford Road and heard another shot. Officers arrived shortly after the second shot and found two .45 caliber shell casings on Mary Lane, but did not locate Davis or Benton at that time. Howard County Police later found Mott's girlfriends' car by using "lowjack."

After an investigation, the State charged Davis with attempted second degree murder, first degree assault, second degree assault, reckless endangerment, unauthorized use of a motor vehicle, use of a handgun in the commission of a felony, conspiracy to commit first degree assault, and unlawful discharge of a handgun within the metropolitan district. A jury trial resulted in a verdict of guilty of all counts. The circuit court sentenced Davis on December 21, 2001, to ten years' incarceration for attempted second degree murder, to run consecutively to a sentence of five years' incarceration, with no possibility of parole, for the use of handgun in the commission of a felony.

Paper No. 11, Ex. 9 at pp. 1-2.

On appeal to the Court of Special Appeals of Maryland, Petitioner raised three questions:

1. Whether the trial court erred in failing to strike Juror Number 46 for cause;

2. Whether the trial court erred in admitting evidence of the recovery of the handgun used in the alleged assault and a copy of Petitioner's Howard County Detention approved inmate visiting list and visitor log; and

3. Whether the evidence was sufficient to sustain Petitioner's conviction given the numerous inconsistent statements of the victim, Craig Mott.

Paper No. 11, Exs. 7-9.

2

In an unreported opinion filed on April 3, 2003, the Court of Special Appeals of Maryland affirmed Petitioner's convictions. *Id.*, Ex. 9. Thereafter, Petitioner filed a pro se petition for writ of certiorari claiming that: "the trial court erred in admitting evidence of the recovery of the handgun used in the alleged assault and a copy of [Petitioner's] Howard County Detention Center approved inmate visiting list and visitor log." *Id.*, Ex. 10 The petition was denied by the Court of Appeals of Maryland on June 20, 2003. *Id.*, Ex. 11.

Petitioner then filed an original and two amended petitions for post-conviction review in the Circuit Court for Howard County. *Id.*, Exs. 1, 12-14. On January 15, 2004, a post-conviction hearing was held before Howard County Circuit Court Judge Dennis M. Sweeney. *Id.* Ex. 1. Judge Sweeney denied the petition. *Id.*, Ex. 15.

Petitioner filed an application for leave to appeal in the Court of Special Appeals, alleging that, "the hearing judge err[ed] in denying relief on ineffective assistance of counsel for failure to present exculpatory witness testimony." *Id.*, Ex. 16. On September 13, 2004, the Court of Special Appeals summarily denied the application for leave to appeal. *Id.*, Ex. 17.

Petitioner filed this § 2254 Petition on November 23, 2004, alleging that his convictions should be overturned because:

1. The trial court erred by admitting a prison visitor's log and other evidence surrounding the circumstances of the recovery of the handgun; and

2. Trial counsel was ineffective for failing to present the exculpatory testimony of Nick Hebron.

Paper No. 1.

## II. Threshold Considerations

### A. Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court. This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking certiorari to the Court of Appeals) and with other claims by way of a post-conviction petition followed by seeking leave to appeal from the Court of Special Appeals. Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this Court. He has exhausted the claims presented here.

**B. Statute of Limitations**

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

**C.  Procedural Default**

Respondents contend that Petitioner's claim that the trial court erred by admitting a prison visitor's log and other evidence surrounding the circumstances of the recovery of the handgun has been procedurally defaulted because while petitioner challenged the evidentiary ruling on his direct appeal he did not do so based on constitutional grounds but rather only on state evidentiary grounds. Paper No. 11.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72 (1977), the Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless the petitioner makes a showing of cause for the failure and prejudice resulting therefrom.

4

Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See Collier v. Jones*, 910 F.2d 770 (11th Cir. 1990). This procedural bar applies when the state court has found procedural default regardless of whether it has also discussed the merits, as long as the court has explicitly invoked the state procedural rule as the basis for its decision. *See Harris v. Reed*, 489 U.S. 255, 264, n.10 (1989); *Ahe v. Styles*, 39 F.3d 80 (4th Cir. 1994).[2]

The Court agrees with Respondents that Petitioner's claims regarding the admission of the prison visitor's log and other evidence surrounding the recovery of a handgun are procedurally defaulted to the extent they assert a due process violation. Petitioner never asserted a constitutional claim in the state court. Rather, Petitioner predicated his claim on a misapplication of state evidentiary rules.[3]

Even where a claim has been procedurally defaulted, this court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are

---

[2]The *Harris* Court emphasized that a federal court has the responsibility to determine whether a state court in fact based its denial of relief on procedural grounds.

[3]To the extent that Petitioner contends that the trial court erred in its ruling as it pertains to Maryland law regarding the admission of evidence, it is not the role of this court to second guess those conclusions. *See Rose v. Hodges* 423 U.S. 19, 21– 22 (1975); *Estelle v. McGuire*, 503 U.S. 62, 67-68 (1991) "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. "Absent 'circumstances impugning fundamental fairness or infringing specific constitutional protections,' admissibility of evidence does not present a federal question." *Gaskins v. McKellar*, 916 F.2d 941, 949-50 (4th Cir. 1990). As Petitioner's arguments are based upon state law, they are not subject to review by this court. *See Estelle v. McGuire* 502 U.S. at 68 (1991); *Spencer v. Murray*, 18 F.3d 237, 239-40 (4th Cir. 1994);

defaulted. *Id.* at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 327.

> *Schlup* observes that
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id.* at 323.

On February 23, 2005, the Court entered an Order affording Petitioner an opportunity to demonstrate the existence of cause for his failure to properly raise his claim in the state courts and prejudice resulting from this failure. Paper No. 12. In response, Petitioner essentially repeats his claim and points out contradictions in the evidence adduced at trial as demonstrating his innocence. Paper No. 13. These arguments are unpersuasive. Petitioner has failed to make the requisite showing. He has presented no evidence, nor suggested that any exists, which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claim is therefore foreclosed from federal habeas review.

### III. Standard for § 2254 Review

Because this Petition was filed after April 24, 1996, it is to be decided under amendments to the habeas corpus statutes contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003); *Beck v. Angelone*, 261 F.3d 377, 380 n.3 (4th Cir. 2001). AEDPA modified the federal court's role in habeas proceedings in order

to prevent federal "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *See Bell v. Cone*, 535 U.S. 685, 693 (2002). Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Section 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curium*). In *Williams v. Taylor*, 529 U.S. 362 (2000), Justice O'Connor explained that a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id*. at 412-413. A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409-410; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003); *Booth-el v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

Further, federal courts must give great deference to a state court's factual findings. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of

7

a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

With these standards in mind, the court will address the merits of Petitioner's remaining, undefaulted, claim.

## A.     Petitioner's Sixth Amendment Claim

To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), a convicted defendant must demonstrate that his counsel's performance (1) "fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant. *Id*. at 688, 692. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. The ultimate focus of the *Strickland* inquiry is on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, a court must consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. In its analysis, a court must be "highly deferential," and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal

quotations omitted). A court must not use the benefit of hindsight to second-guess strategic decisions made by counsel unless they were unreasonable. *Id*. at 690.

With regard to the prejudice prong of *Strickland*, a defendant need not demonstrate that the outcome of the proceeding would have been different, but rather that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner maintains that his trial counsel erred in failing to call as an exculpatory witness Nick Hebron. *See* Paper No. 1. Nick Hebron testified at the post conviction hearing, in pertinent part, as follows:

> Q: [Post-conviction counsel]: All right. What happened?
>
> A: Um, CJ [the victim] Was asked to get out of the car--
>
> Q: By who?
>
> A: Amir. He asked CJ to get out the car. Him and Amir Benton and BJ got-- Benjamin Davis got out the car, CJ got out the car. They were talking. I know I was listening to the radio. I turned around, and I seen CJ running up the hill, and he ran into the woods, and that's when BJ-Benjamin Davis-had got into the front seat-the front driver' seat, closed the door, and drove the car down the hill. I asked him–
>
> Q: Did anyone else get in the car at that point?
>
> A: No.
>
> Q: What happened to Amir?
>
> A: He was still outside the car.
>
> Q: Okay. And so the car–Mr. Davis got in the car and drove down the hill; is that correct?

A: That's right.

Q: What happened then?

A: We went to-got to the bottom of the hill, made a left on Guilford, we made a left on, I think it's Pine road, came up Pine Road, came back to where Amir and CJ had been fighting or whatever, and we parked it, the car, in, I think his name's Mr. Page, yard. And parked there, and got out the car and went home. And when I–I went down the hill, and they walked up the hill.

Q: Now, when you–you didn't go home in the car; is that correct?

A: No, sir.

Q: Now, during the course of the evening, did you hear anything unusual?

A: No, sir.

Q: Nobody fired any shots?

A: No, sir, not to my understanding.

Q: Okay.

A: (Inaudible).

Q: Did you see Mr. Davis fire any shots?

A: No. I did not. And I can truly say he didn't. He was in the car with us; he drove; 'cause when he was driving, I asked him where, I said, "Where you goin'?" He was like, "I'm going go park the car." So we went down, came, you know, parked the car."

Q: How would you describe his demeanor?

A: Him?

Q: Yeah. How was he acting?

A: Like BJ.

Q: Was he all out of shape, or was he just, like, normal?

A: No, he wasn't out of shape. He was normal.

Q: Okay. Was there–what would you like to add that I haven't asked you about?

> A:       Yeah, I just wanted to let he Court know that he–I–there was no gun in his hands, he didn't do nothing, and an, and , and liking of shooting anybody. And I know, when I went to say this the first time I went to court, I was told that I wasn't needed.
>
> Q:       By whom?
>
> A:       His defense attorney.
>
> Q:       Did you see a gun at any time that evening?
>
> A.       No.

Paper No. 16, pp. 73-75

On cross examination Mr. Hebron reiterated that he did not see a gun or hear a shot that evening. *Id.*, p. 78. Trial counsel testified at the post-conviction hearing that she had interviewed Mr. Hebron prior to the trial and that her contemporaneous notes revealed that he did not have any specific information regarding the events of the evening. During his pre-trial interview he told her that he was unaware that there was anything wrong between the victim, Petitioner, and Amir Benton. He specifically told her that: he did not hear anything wrong; did not hear an argument; and did not see a fight. He did see the victim run into the woods and assumed that he needed to use the bathroom. Trial counsel testified that Mr. Hebron's version of events sounded "willfully ignorant" and given his professed lack of knowledge as to what transpired the evening of the shooting, he was not helpful to Petitioner's case. *Id.,* pp. 90-91.

In rejecting Petitioner's claim of ineffective assistance of counsel for failing to call Nick Hebron, the post-conviction court found as follows:

> Mr. Davis also asserts that Ms. Michael did not call various witnesses who could have supported his version fo the events, including whether he was in a position to fire the shots at Mr. Mott. Ms. Michael testified in the hearing before the Court that she had subpoenaed all the witnesses in question, had interviewed them in person, or over the phone, and that after discussing the matter with Mr. Davis at trial, he agreed with her recommendation at that time that the witnesses not be called and that they rely on the weaknesses of the State's case. In his testimony at the January 15th hearing , Mr. David disputed Ms..Michael's testimony before this Court,

but it should be noted that at sentencing in front of Judge Kane, he acknowledged that he had been "persuaded" by Ms. Michael not to call the witnesses. It is clear to this Court that Ms. Michael's testimony is more credible than Mr. Davis's and that he clearly is not being fully candid in his allegations and testimony before this Court.

In any event, the friends of Mr. Davis who testified before this Court would not, in this Court's view, have materially aided his defense. They were simply not credible or testified that they did not see the events at the critical points as to whether Mr. Davis had the gun or fired the shots. It was certainly good trial strategy not to pollute the case with this questionable testimony when the defense's best point was the weakness fo Mr. Mott's testimony and the circumstantial nature of the balance of the case.

In short, there was no ineffective assistance of counsel in failing to make further objections, motion or requests for mistrial based on Mr. Mott's testimony. What counsel did is fully adequate and more than reasonably competent work as an attorney.

There is no identification of any credible nature that Ms. Michael failed to properly investigate the case. The Court accepts her testimony and concludes her preparation was more than adequate to the nature of this case and certainly meets minimal threshold requirements.

Paper No. 11, Ex. 15, pp. 4-6.

Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied that in applying the *Strickland* standard to the instant allegations of trial counsel's allegedly deficient performance, Petitioner has not demonstrated that counsel's performance was deficient or that he was prejudiced by the conduct of trial counsel. *See* 28 U.S.C. § 2254(d); *see also Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing.").

### IV. Conclusion

In light of the foregoing, the Court sees no reason to overturn Judge Sweeney's decision. That decision does not involve an unreasonable application of *Strickland* and satisfies the §2254(d) standard of review. Accordingly, this Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.


Date: <u>March 29, 2006</u>                                    <u>        /s/                </u>
                                                                William D. Quarles, Jr.
                                                                United States District Judge